```
 1                   UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2      -------------------------X
        BENJAMIN MOHAMMED AL          Docket No. CA 05-765
 3      HABASHI AND SHAKER AAMER
                        Petitioner,
 4
                v.                    Washington, D.C.
 5                                    July 29, 2008
                                      10:30 a.m.
 6      GEORGE BUSH, ET AL
                        Respondent.
 7      -------------------------X
                          STATUS HEARING
 8          BEFORE THE HONORABLE EMMET G. SULLIVAN
                UNITED STATES DISTRICT JUDGE
 9      APPEARANCES:
        For the Petitioner:   Law Offices of Zachary Katznelson
10      (BY PHONE)            By:  Mr. Zachary Katznelson
                              22 Tudor Street
11                            London, England EC4Y 0AY
                              207.353.4640
12
        For the Respondent:   United States Department of Justice
13                            Civil Division, Federal Programs Branch
                              By:  Mr. Judry Laeb Subar
14                                 Mr. Edward Martin
                                   Ms. Arlene Pianko Groner
15                            20 Massachusetts Avenue, N.W.
                              Room 5134
16                            Washington, D.C.  20530
                              202.514.4107
17
                              U.S. Department of Justice
18                            Civil Division, Deputy Assistant A.G.
                              By:  Mr. John C. O'Quinn
19                                 Mr. Gregory Katsas
                              950 Pennsylvania Avenue, N.W.
20                            Room 3137
                              Washington, D.C. 20530
21                            202.514.2331

22      Court Reporter:       Catalina Kerr, RPR
                              U.S. District Courthouse
23                            Room 6716
                              Washington, D.C.  20001
24                            202.354.3258

25      Proceedings recorded by mechanical stenography, transcript
        produced by computer.
```

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2            (10:30 A.M.; OPEN COURT.)

 3            THE COURT:  Do you have another team coming in?

 4   Counsel, you're going to be here all day?

 5            MR. SUBAR:  I'll be here all day.

 6            THE COURT:  Would you like to take a short recess?

 7   Is the attorneys here for the next case?

 8            MR. SUBAR:  The Government attorneys are.

 9            THE DEPUTY CLERK:  On the next case, I have to make

10   a call to London.  It's a London call.

11            (OFF-THE-RECORD DISCUSSION)

12            THE COURT:  We'll take a short recess.  We have to

13   call London for this case.  You want to take a few minutes?

14   It's up to you.

15            THE DEPUTY CLERK:  This is Carol calling you from

16   Judge Sullivan's courtroom.  I'm going to call the case.

17            MR. KATZNELSON:  Okay.

18            THE DEPUTY CLERK:  Civil Action 05-765, Benjamin

19   Mohammed Al Habashi, et al versus George Bush, et al.  Would

20   counsel please identify yourselves for the record.

21            MR. KATZNELSON:  Zachary Katznelson for the

22   Petitioner, Mr. Mohammed.

23            THE COURT:  All right.  Mr. Nelson, good morning.

24            MR. KATZNELSON:  Good afternoon, but good morning to

25   you, sir.
```

1          THE COURT:  For the Government.  There is no need to

2     stand.

3          MS. GRONER:  Good afternoon.  This is Arlene Pianko

4     Groner, counsel for the United States.

5          THE COURT:  All right, Counsel.  Good morning.

6          MR. KATSAS:  Gregory Katsas again for the

7     Government.

8          MR. SUBAR:  Judry Subar for the Government.

9          MR. O'QUINN:  John O'Quinn for the Government.

10         THE COURT:  All right, Counsel.  All right.

11    Mr. Nelson, you can hear me clearly, can you?

12         MR. KATZNELSON:  Yes, I can.  Thank you.

13         THE COURT:  All right.  This is a status hearing.

14    Government counsel are present.  I scheduled a number of these

15    hearings today.  Unfortunately, for Government counsel, they

16    have to hear me repeat some issues that I addressed in the

17    previous case.  I'm going to address common issues that the

18    Court believes are common to the nine cases on this court's

19    calendar.

20         My understanding in this case is that the stay that

21    was imposed has previously been lifted.  If anyone disagrees

22    with that, they need to let me know now.  I will file and

23    issue an order that lifts the stay.  My understanding is the

24    stay has been lifted in the case.

25         I also recognize that the issue I'm about to address

1   is on appeal, but I will direct that the Government file

2   notice with the Court 30 days prior to any transfer of a

3   Petitioner from Guantanamo Bay.

4           The next question is directed to Government counsel

5   or to Petitioner's counsel.  The CSRT record, that's been

6   filed in this case?

7           MS. GRONER:  I believe the return has been filed in

8   this case in May of 2005, but this was a pre-*Boumediene*

9   return, and we would need to file a post-*Boumediene* return.

10          THE COURT:  All right.  I'll direct that the CSRT

11  return be filed by August the 12th then.

12          I'm going to issue an appropriate order in each of

13  the cases on my calendar that addresses the procedural

14  framework.  I'm going to draw on the Government's suggestions

15  and the Government has made some suggestions in each one of

16  the cases.  I will also draw on suggestions from Petitioner's

17  counsel in the issues set forth in Judge Hogan's order setting

18  forth the legal issues to be briefed by the parties.

19          The Government's brief will be due August 12th.

20  Petitioner's response will be due August 22nd, and the

21  Government's reply will be due September the 4th.  I'm going

22  to direct the filing of status reports every 30 days.  The

23  first status report is due September the 2nd.

24          My understanding, correct me if I'm wrong, is that

25  there's an appropriate protective order in this case.  Is

1   that -- am I correct?

2            MR. KATZNELSON:  That is correct, Your Honor.

3            THE COURT:  All right.  The Government concurs?

4            MS. GRONER:  I believe that is correct.

5            THE COURT:  All right.  There's some lack of clarity

6   in some of these cases.  That's why I'm just making sure that

7   I address everything that needs to be addressed.  That's my

8   understanding as well that there's an appropriate protective

9   order.  I'm sorry.

10           MS. GRONER:  Your Honor, in our status report, we

11  noted that the amended protective order procedures are in

12  effect, but we reserved the right to seek modifications.

13           THE COURT:  That's fine if you wish to modify it.

14  I'm going to direct you to do it sooner than later, though, so

15  to the extent that the Government seeks to modify, it should

16  attempt to obtain the consent of Petitioner's counsel to do

17  so.  In the event that you're unable to do so, I need to

18  resolve that issue, and I'm going to have to resolve it within

19  the next seven calendar days because I want to get this case

20  moving forward.

21           So I'll give counsel for both sides the opportunity

22  to modify as appropriate, but if you're unable to modify,

23  you'll need to file your respective individual submissions

24  with the Court by no later than a week from today, which is --

25           MS. GRONER:  Your Honor...

1          THE COURT:  Yes.

2          MS. GRONER:  There is an issue that's being briefed

3    before Judge Hogan with respect to the protective order, and

4    we would ask that there be a uniform protective order for all

5    the cases.

6          THE COURT:  All right.  To the extent I'm able to do

7    that, I will.  I'll certainly consider anything that any of my

8    colleagues issue in this case, but I encourage counsel -- if

9    the parties before Judge Hogan -- are the parties before Judge

10   Hogan in a posture to submit an agreed to protective order?

11         MR. SUBAR:  Your Honor, if I may.  The parties have

12   submitted their position to Judge Hogan.  They are largely, if

13   not completely, at least largely in agreement with regard to

14   the point that the only point that's before Judge Hogan with

15   regard to a change in the protective order has to do with

16   changing the filing procedures, which would make things easier

17   for the Court and for Petitioner's counsel with regard to the

18   filings.

19         THE COURT:  That's fine.

20         MR. SUBAR:  Other than that, at this point the

21   Government is not seeking any changes.

22         THE COURT:  That's fine.

23         MR. SUBAR:  And I don't think Petitioners are

24   either.

25         THE COURT:  That's fine.  I encourage -- Mr. Nelson,

1    I would encourage you to try and reach an agreement with the

2    Government if the Government proposes a change.  If you're

3    unable to agree, then let the Court know.

4            MR. KATZNELSON:  Will do, sir.

5            MR. SUBAR:  Your Honor, the question there, I think,

6    is one of timing.  If Judge Hogan doesn't enter the change

7    that we're talking about within the time frame that Your Honor

8    just identified --

9            THE COURT:  Let me know -- let me know what the

10   parties have agreed in the case before Judge Hogan, regardless

11   of whether Judge Hogan has approved it or not.  If the parties

12   have agreed, that's going to carry a significant amount of

13   weight with respect to the Court.

14           I may modify it, I may not, but I at least want to

15   know what the parties' best thoughts are with regards to the

16   protective order, even if Judge Hogan has, because of other

17   cases, has not put his imprimatur on that protective order.

18           MR. SUBAR:  Within the time frame that Your Honor

19   just identified.

20           THE COURT:  Within the next week, right.  Yes.  Has

21   this Petitioner been cleared for release?

22           MR. KATZNELSON:  No, he has not, Your Honor.

23           MS. GRONER:  Your Honor, this Petitioner is charged

24   pursuant to the Military Commissions Act and charges have been

25   preferred but the convening authority has not yet deferred the

1    charges.

2            THE COURT:   That was going to be a next question.

3    Just -- so, in other words, it's almost as if there is a grand

4    jury proceeding.   You've submitted your arguments for the

5    formal charging, but he's not been formally charged to date,

6    correct?

7            MS. GRONER:   The charges were sworn in May of 2008.

8            THE COURT:   What's the time frame for --

9            MR. KATZNELSON:   I apologize, Your Honor, if I may

10   interrupt.   Whoever is speaking in the courtroom, if they

11   wouldn't mind speaking into the microphone.   I can't hear what

12   they're saying.

13           MS. GRONER:   Sure.   On May 28th, 2008 --

14           THE COURT:   I don't think it's on.

15           MS. GRONER:   Hello.   Okay.   Much better.   I'm sorry.

16           MR. KATZNELSON:   Thank you.

17           MS. GRONER:   In May 2008, there was the swearing of

18   charges, and the next step is for the receipt of the charges

19   by the convening authority and the service of charges on the

20   Petitioner.

21           THE COURT:   And is the Petitioner charged at that

22   point once he's served with the charges?

23           MS. GRONER:   Yes.   Once the Petitioner is served

24   with the charges, then the matter can proceed before the

25   Military Commission.

1          THE COURT:  All right.  So, is it -- is that the

2     only -- is it -- is there just a ministerial act that's

3     required now to formally charge him or does that board need to

4     take some action?  I just need to get a clear picture of that.

5          MS. GRONER:  The convening authority has to make the

6     decision whether to proceed, and --

7          THE COURT:  What's the time frame for that?

8          MS. GRONER:  I believe it's a discretion of the

9     convening authority.  I understand that Petitioner's counsel

10    has --

11         THE COURT:  Counsel, you can move that thing down.

12    You don't have to strain your neck like that.  You can push

13    that thing.  There you go.

14         MS. GRONER:  Okay.  I understand that the

15    Petitioner's counsel has asked the convening authority to

16    conduct some investigations, and that may be having an impact,

17    but I don't know what is holding it up, if anything.

18         THE COURT:  Mr. Nelson.

19         MR. KATZNELSON:  That is correct.  I think, Your

20    Honor, your analogy to a grand jury is relatively apt.  The

21    convening authority is considering a range of matters in

22    deciding whether to go forward and actually officially charge

23    Mr. Mohammed.

24         And one of the things we have indeed asked the

25    convening authority to consider is the real long litany of

1   abuse and torture that our client has gone through in the

2   hands of the Americans, in the hand of the American

3   Government, in the hands of Morocco where he was sent by the

4   CIA and hands of the Pakistani authorities where he was held

5   for several months before being turned over to the CIA, and we

6   feel that these are critical issues both in terms of the

7   reliability of any statement that Mr. Mohammed gave, but also

8   about the complicity of various governments in his treatment,

9   in his torture.

10          And what the convening authority has to consider is

11   a range of things, including national security issues, so the

12   involvement of foreign government security services in

13   Mr. Mohammed's case, and we actually have an active case going

14   on right now today here in the U.K. courts about the British

15   government's complicity in Mr. Mohammed's case.  This is one

16   factor.

17          U.K. security service agents right now are

18   testifying today in this court in London about their

19   involvement in Mr. Mohammed's case.  This is something for the

20   convening authority to consider, for instance, if now CIA

21   agents, British government agents, Pakistani government

22   agents, Moroccan government agents are all going to be pulled

23   into this case, it's a factor for the convening authority to

24   consider, and the national security for the United States,

25   vis-a-vis, its government, just as an example of the type of

1   considerations she has to undertake in making a decision to

2   charge Mr. Mohammed.

3        THE COURT:  So you have access to this -- to this

4   proceeding?  You've made request that certain information be

5   considered, then, correct?

6        MR. KATZNELSON:  That's right.  We can submit in

7   writing to the convening authority.  We don't get to sit down

8   and talk to or have any formal hearing of any type.

9        THE COURT:  All right.  So, are you counsel of

10  record then for Mr. Wahab [sic] in this case?

11       MR. KATZNELSON:  For Mr. Mohammed in the habeas

12  proceeding, yes, and he does not have official military

13  counsel right now.  He is --

14       THE COURT:  Because he's not been formally charged.

15       MR. KATZNELSON:  Exactly, exactly, and so because we

16  are his attorneys and we're aware of what's happening, we have

17  been acting in his behalf, but we're not officially appointed

18  yet.  He has no official appointed military or civilian

19  counsel before the military courts.

20       THE COURT:  All right.  Now, you've constantly

21  referred to your client as Mr. Mohammed, correct?

22       MR. KATZNELSON:  That's right, yes.

23       THE COURT:  Is there -- is he correctly named in

24  this proceeding before me in case 05-886?

25       MR. KATZNELSON:  His correct name is Benjamin

1    Mohammed.

2            THE COURT:  I'm sorry.  Just one second.  Is this

3    the case number that you have?

4            MR. KATZNELSON:  05-765.

5            THE COURT:  I'm sorry.  I have the wrong one.

6            MS. GRONER:  Your Honor.

7            THE COURT:  I'm sorry, just a minute.  I'm sorry.  I

8    had tabbed over to the wrong case.  Sorry.  I'm addressing

9    common issues, and it's the same common issue list I'm using

10   in every case, so I'm just -- I caught the reference to

11   Mr. Mohammed.  I just want to make sure I have Mr. Mohammed's

12   case file before me.  That's CA 05-765.

13           MR. KATZNELSON:  That's correct.

14           THE COURT:  All right.  That's fine.

15           MS. GRONER:  Your Honor.

16           THE COURT:  Yes.

17           MS. GRONER:  This case is different from the case we

18   previously heard.  If you look at the Petitioner's report that

19   they filed on the 28th of July --

20           THE COURT:  Yes.

21           MS. GRONER:  -- in response to your first question,

22   the Petitioner conceded that this case is not yet ready for a

23   merits resolution, and that is very clear in this case where

24   the Petitioner's counsel is in the process of commenting on

25   the same facts to the convening authority and trying to

1  influence the decision of the convening authority, and they've

2  also made clear that they're proceeding in the British courts

3  for the same investigation.

4         And so we would urge you in this case, as well as in

5  the other cases, but particularly in this case, to defer on

6  the habeas matter and allow the Military Commission to address

7  these issues first.

8         THE COURT:  Mr. Nelson.

9         MR. KATZNELSON:  I would be firmly opposed to that

10  for a few reasons.  First of all, the time clock in the

11  military proceedings, we don't actually know when it's going

12  to go forward.  The charges have been pending before the

13  convening authority since May, and we've had no action, and we

14  didn't get any response from the convening authority to

15  anything that we sent until just recently.

16         It seems that there are months and months of

17  inaction, and we're not sure at all when the convening

18  authority is going to make a decision or whether or not, in

19  fact, they are going to investigate any of the allegations

20  that we have made.

21         I think there is a more fundamental issue, which at

22  the end of the day, let's assume the Military Commission's

23  process goes forward, Mr. Mohammed is charged, he's even

24  acquitted at the end of that.  Under the Government's

25  arguments, as I understand them, he can still be held in

1   Guantanamo Bay, regardless of what the outcome is in the

2   Military Commission's process.  If that's the case, then that

3   won't help him either way and it doesn't get at the exact

4   remedy we ask for in the habeas, which is release, release

5   from custody.

6        The Military Commission's proceeding will not impact

7   that.  Now, if he's found guilty, he'll obviously appeal, but

8   if he's found not guilty and we fully expect that he would be

9   found not guilty, based on what we know, if it's a fair and

10  open proceeding, then he will have no relief available to him

11  if his habeas petition is thrown out or it's stayed because

12  the Government can say he can be held until the end of the war

13  on terror, whenever that may be.  It can be when all of us

14  have passed away.

15       THE COURT:  Anything further?

16       MS. GRONER:  Yes, Your Honor.  First of all, there's

17  a question of jurisdiction, which we discussed in the previous

18  case, and we believe this court doesn't have jurisdiction,

19  but --

20       THE COURT:  To order a factual return.

21       MS. GRONER:  Yes, Your Honor.  But putting that

22  aside, there is a question of sequencing, which we've also

23  discussed with you, and I won't belabor, but here we have a

24  Petitioner who has his day in court and he will, if -- if he

25  is successful in persuading the convening --

1          THE COURT:   Have his day in court when?

2          MS. GRONER:   Before the convening authority.

3          THE COURT:   When?

4          MS. GRONER:   Well, right now his counsel is

5     negotiating with the convening authority and trying to

6     persuade the convening authority not to bring charges.  If his

7     counsel is successful, then he'll be in the same situation as

8     all the other habeas petitioners and you'll be able to deal

9     with him the same way as every other habeas petitioner.

10          If he's not successful, then he'll have his day in

11     court before the Military Commission, and once again, if he's

12     acquitted, then it will be discretionary for the military to

13     decide if it's safe to release him or if not, and if the

14     military decides not to release him, then again he'll be in

15     the same situation as all the other habeas petitioners, but he

16     shouldn't be allowed to go ahead of the line, ahead of the

17     line with all the other habeas petitioners when he has these

18     other procedures available to him right now.

19          THE COURT:   So, his habeas corpus rights are

20     subordinate to someone else's?

21          MS. GRONER:   I'm not saying they're subordinate.

22     I'm saying that --

23          THE COURT:   You said he can't go ahead of the line,

24     so there is some reason why his habeas corpus rights should

25     not be focused on by the Court at this point.

1    MS. GRONER:  No, it should be focused on the Court.

2    I'm not saying that you should dismiss it.  I'm saying that

3    you should stay it and allow him to get the relief that he

4    seeks in another forum.

5    THE COURT:  Is that what the Supreme Court intended

6    in the *Boumediene* decision?

7    MS. GRONER:  The *Boumediene* decision did not address

8    whether or not you have to give priority to one habeas case

9    over another habeas case.  It's your discretion to decide

10   whether or not this case should take priority over the other

11   cases.

12   THE COURT:  All right.  Anything further, Counsel?

13   MR. KATZNELSON:  If I may, Your Honor, I would just

14   say counsel for the Government just said that Mr. Mohammed

15   should get relief elsewhere, but even if he is acquitted

16   before the Military Commission, I just want to reiterate this

17   point, he doesn't go free, and so he doesn't get the same

18   remedy.  He doesn't get the same relief that he would get

19   through a habeas proceeding where he just succeeded before you

20   in this habeas proceeding.  They are two very different

21   procedures.

22   THE COURT:  The Government -- I'm sorry, go ahead, I

23   cut you off.

24   MR. KATZNELSON:  I apologize.  I was just going to

25   say, so he doesn't get a day in court in the same way before

1  the Military Commission as he would before in a habeas

2  proceeding.

3       THE COURT:  The Government has argued that the Court

4  lacks the jurisdiction to order the filing of a factual

5  return.  Do you agree with that?

6       MR. KATZNELSON:  I don't agree at all, and I'm not

7  quite sure on what basis they would make that argument, and

8  they have filed a CSRT record already for my client.  If they

9  wish to amend, I think they should seek leave to amend and put

10  forth both together with the actual amendments, provide them

11  to the Court and provide a legal argument as to why they

12  should amend.

13       I don't understand how in a habeas case, the Court

14  cannot order a factual return, the fundamental basis of a

15  habeas proceeding.

16       MR. O'QUINN:  Judge Sullivan.

17       THE COURT:  Yes.

18       MR. O'QUINN:  If I may, just to clarify one of the

19  issues that was raised previously and also this morning.  It's

20  not the Government's position that the Court does not have

21  jurisdiction to order the filing of a factual return.  Let me

22  clarify that point.

23       THE COURT:  Sure.

24       MR. O'QUINN:  There are some jurisdictional issues

25  in the cases where there's an interplay between habeas and

 1   between the Military Commissions Act, specifically with what

 2   authority the Court might could exercise pertaining to the

 3   Military Commission proceeding itself.  That issue is teed up

 4   in the Ben Al-Shibh case, but that's -- whether the Court has

 5   jurisdiction over the Military Commission and the Military

 6   Commission procedures is a separate issue from whether or not

 7   the Court has jurisdiction to order a factual return, so I

 8   just want to clarify for the record, it's not the Government's

 9   position that the Court cannot order factual returns or

10   proceedings to move forward in the habeas cases.  Our point,

11   and I'm not going to belabor it, because you've already heard

12   it from Mr. Katsas and from --

13             THE COURT:  No, no, but you're entitled to make your

14   record, and Mr. Nelson has not heard your point.

15             MR. O'QUINN:  The only point that I was going to

16   make is that the argument that we're making is one of

17   sequencing and with respect to resources.  That is to say that

18   even if the Court were to move forward with the habeas case,

19   reviewing his status in the habeas context, it's separate and

20   apart from that.  Our basis -- we have an additional basis for

21   holding the Petitioner here; namely, that he is a pretrial

22   detainee, that there is going to be a Military Commission

23   proceeding, and that, of course, if he's convicted in the

24   Military Commission proceeding, that would itself provide yet

25   another basis for detaining him, and that as a matter of

1    sequencing and efficient use of resources, then it makes sense

2    to not proceed with the cases where there are charges pending

3    under the Military Commissions Act.  But again, that's -- that

4    is a discretionary issue.  You've heard Mr. Katsas' own -- on

5    the sequencing issue.  Our request is that you would, in

6    whatever order makes sense to you, but you require there be

7    some sequencing here and we would ask all of them not be due

8    on the same day.

9           And it's not because it's not that the Government

10   doesn't have the information available to it or the Government

11   is going out and creating new records.  It's that when you

12   begin pulling together material that is held in a lot of

13   different locations and in different -- by different people

14   and you want to pull all of that material together, it does

15   take some time to assemble them and it does take some time in

16   terms of having the Government lawyers -- just simply getting

17   detainees in place right now, when you're dealing with

18   classified information, not all of the lawyers that we have at

19   our immediate disposal have the necessary classifications.

20          We're getting those lined up.  Even things as simple

21   as just using computers, as the Court knows, you to have

22   special computers for that.  We are getting -- getting those

23   lined up, getting the attorneys having accounts to use those

24   computers.  I realize that for somebody who has been held for

25   a significant period of time, that's not what they want to

1  hear, but as a practical matter, there are logistical issues

2  in being able to proceed with all of these cases at the same

3  time, and it's for those reasons that in terms of putting

4  together sequencing, we'd submit that it would -- it would be

5  in the Government's interest and in the Court's interest to

6  put the Military Commission's cases at the back of the line,

7  so to speak.

8          THE COURT:  All right.  And this man has been

9  detained since when?

10          MR. KATZNELSON:  He was first picked up in Pakistan

11  in April 2002 and he's been in U.S. custody since July of

12  2002.

13          THE COURT:  I'm sorry, Counsel, I was reading

14  something.  2002?

15          MR. KATZNELSON:  That's right.  He's been in

16  American custody since July 2002.  Before that, he was in

17  Pakistani custody for two months.

18          THE COURT:  Right, right.  I think it makes sense to

19  require, at the very least, the filing of a factual return by

20  August the 29th for someone who has been detained for

21  approximately six years, and I'm going to direct that the

22  factual return be filed by August the 29th.

23          There is -- there's some remarks I'm going to give

24  in each one of these cases.  I'm sorry Government counsel has

25  to hear all these remarks again, they'll be brief, but it's

1   important that Petitioner's counsel be informed of the Court's

2   position with respect to logistical issues as well.

3           While there obviously remain issues to be briefed

4   and other matters to work out, it appears highly likely that

5   some or all Petitioners will be entitled to a hearing.  This

6   court will do everything in its power to make sure any such

7   hearing is scheduled as soon as reasonably practicable.

8           To the extent the Government intends to raise

9   logistical issues that would impede or delay such a hearing,

10  such as security issues, travel issues, resource issues,

11  counsel is hereby put on notice that they need to be working

12  those issues out now.

13          The Court will not tolerate eleventh hour delays for

14  issues that are foreseeable.  In other words, do not wait

15  until the Court sets a hearing date to raise a host of issues

16  and expect the Court and Petitioners to wait while the

17  Government works them out.

18          I will grant leave to amend, and that briefing

19  schedule will be identical to the briefing schedule that the

20  Court put in place for the procedural framework issues August

21  the 12th; August the 22nd for any responses; and September

22  the 4th for any replies.

23          The Government has indicated that it intends to file

24  a motion to dismiss in this case -- Wait, I'm sorry.

25          (PAUSE.)

 1              THE COURT:   If I said I was going to grant leave to

 2    amend, I meant to say I was going to grant leave to file a

 3    motion to amend.   Whether I grant the motion to amend is

 4    another question, but the Government needs to file its motion

 5    to amend along with its proposed amendment by August the

 6    12th and their responses by the 22nd and replies by

 7    September the 4th.

 8              With respect to any proposed motion to dismiss, it's

 9    the same filing deadline, August 12th, and the response is

10    due August 22nd, reply is due September the 4th.

11              That covers my list of issues that the Court wanted

12    to bring up with the parties.   I'll entertain any additional

13    requests from either Petitioner's counsel or Government

14    counsel.

15              MR. KATSAS:   Judge, just a point of clarification.

16    When you say "motion for leave to amend" --

17              THE COURT:   The factual return.

18              MR. KATSAS:   You mean to submit a factual return

19    that is different from the old combatant status review

20    tribunal record.

21              THE COURT:   If the Government plans to do so, that's

22    correct.   And then submit, along with your motion to amend,

23    your proposed factual return.

24              MR. KATSAS:   Understood.   Thank you.

25              THE COURT:   All right.   Mr. Nelson, anything

1   further?

2         MR. KATZNELSON:  Not at this time, Your Honor.

3         MS. GRONER:  Your Honor.

4         THE COURT:  Yes.  Government counsel.

5         MS. GRONER:  I had written down earlier the return

6   was to be filed August 29th.  Is that when we would file the

7   motion for leave to file?

8         THE COURT:  Actually, you know, you raise a good

9   point.  There is a factual return in this case.

10        MS. GRONER:  Yes, Your Honor, from 2005.

11        THE COURT:  Does the Government -- did the

12  Government indicate -- I just don't recall whether the

13  Government indicated it plans to seek to amend.  I don't think

14  it did in this case.

15        MS. GRONER:  Your Honor, we would need to amend the

16  return.  It might have been near the end, and the other case

17  law that's come down since 2005.  The return that was filed

18  before *Boumediene* would not be sufficient for the Court today,

19  and we would ask for the opportunity to file the motion for

20  leave to amend when we file the amendment together.

21        THE COURT:  Mr. Nelson.

22        MR. KATZNELSON:  Well, I think it makes sense for

23  them -- for the Government to file the motion for leave to

24  amend and their proposed amendments at the same time.  As

25  there is already a CSRT return filed, I think the

1    August 12th deadline makes sense.  If -- if -- I don't see a

2    reason why that should be delayed.  They don't have to prepare

3    anything new, really, because also, if -- the reality is, the

4    Government has been preparing a case.  If the prosecutor has

5    prepared a case against Mr. Mohammed that's now before the

6    convening authority, they don't have any further work to do in

7    my mind.  They can just get the file, so long as it also

8    includes any exculpatory information that's critical.

9            THE COURT:  I'm inclined to agree.  Why do you need

10    until the 29th?

11            MS. GRONER:  Your Honor, first of all, we would need

12    to find exculpatory materials.  The Supreme Court was very

13    clear about that, and we would intend to provide that, but we

14    need to go through the record and go through the material

15    that's classified and work with the agencies to see what could

16    be filed unclassified, what has to be filed classified, and we

17    need the time to go through the record and see all the

18    evidence that's been accumulated since 2005 so that the Court

19    has the best, most reliable record before it when it reviews

20    the return.

21            THE COURT:  All right.  This is the time frame the

22    Court's going to impose.  August 12th for the filing of a

23    motion as well as the proposed amended return; the 22nd, if

24    any response; September the 4th for any reply.

25            Anything further, Mr. Nelson?

1          MR. KATZNELSON:  No, thank you, Your Honor.

2          THE COURT:  All right, Counsel.  Government counsel?

3          MS. GRONER:  Nothing further.

4          THE COURT:  All right.  Thank you.  Parties are

5    excused.  Thank you.

6          We'll take a short recess for the court reporter, a

7    short recess.

8          (PROCEEDINGS END AT 11:00 A.M.)

9                              *-*-*-*-*

10

11

12                  **CERTIFICATE OF REPORTER**

13          I, Catalina Kerr, certify that the foregoing is a

14   correct transcript from the record of proceedings in the

15   above-entitled matter.

16

17

18

19

20   _____  _____

21   Catalina Kerr                     Date

22

23

24

25